No. 17,514.

## Page v. The State.

CRIMINAL LAW.—*Homicide.* — *Self-defense.* — *Erroneous Instruction.—Duty to Retreat.*—In an action on an indictment charging murder in the first degree, where the defense of self-defense was interposed, the following instruction was erroneous: "In order to justify a homicide on the ground of self-defense, a person endangered or assailed must employ all reasonable means within his power, consistent with his safety, to avoid the danger and avert the necessity of taking life. He must even retreat, if retreat be safe and practicable; but where one is attacked and his life is in danger, or he is in danger of great bodily harm from his adversary, and retreat is not safe or practicable, he is not obliged to retreat."

SAME.—*Homicide.—Instruction.— When Person Attacked Should Retreat.—Contingency Rule.*—It is essential that an instruction that the person assailed must retreat, should also state the contingency when such retreat is required, and should not have the rule to apply without reference to the character or apparent character of the attack.

SAME.—*Homicide.—Self-Defense.*—The right to resist force with force,

without retreating, depends upon the fact that the person who so resists was himself without fault and in a place where he had a right to be; and the person assailed may go to the extent of taking his adversary's life, if in repelling his assailant he uses no more force than is reasonably necessary in his own self-defense.

From the Morgan Circuit Court.

*J. C. Robinson, M. H. Parks, A. D. Rose, J. E. Sedwick* and *O. Mathews,* for appellant.

*W. A. Ketcham,* Attorney-General, *M. Moores, W. R. Harrison, C. G. Renner* and *W. E. McCord,* for State.

HACKNEY, J.—The appellant. was charged with the offense of murder in the first degree in the killing of Hiram C. Gregory, and upon the trial he was found guilty of voluntary manslaughter.

The defense was that the homicide was justifiable as in self-defense.

Of the charges given by the court, were the following:

"10. One who is without fault and in a place where he has a right to be, and is there unlawfully assailed, may without retreating repel force with force and go even to the extent of taking the life of his adversary, if in repelling his assailant he uses no more force than is reasonably necessary in his own self-defense."

"18. The law is tender of human life and will not suffer the life even of an assailant and wrong-doer to be taken unless the assault is of such a character as to make it appear to the defendant reasonably necessary to him to take life in defense of his own life, or to protect his person from great bodily harm. In order, therefore, to justify a homicide on the ground of self-defense, a person endangered or assailed must employ all reasonable means within his power, consistent with his safety, to avoid the danger and avert the necessity of taking life. He must even retreat, if retreat be safe and practicable; but where one is attacked and his life is in

danger, or he is in danger of great bodily harm from his adversary, and retreat is not safe or practicable, he is not obliged to retreat; he may even pursue his adversary, if in that way lies his safety, until he has secured himself from the threatened danger, and if in so doing, to save himself, he kills his adversary, it is self-defense.''

The proposition contained in the tenth charge is conceded to be the law as far as it goes, and there can be no doubt, in this State, that it is the law. *Runyan* v. *State*, 57 Ind. 80; *Miller* v. *State*, 74 Ind. 1; *Presser* v. *State*, 77 Ind. 274; *Batten* v. *State*, 80 Ind. 394; *Story* v. *State*, 99 Ind. 413; *Fields* v. *State*, 134 Ind. 46; *Plummer* v. *State*, 135 Ind. 308.

One of the propositions charged in the eighteenth instruction, it is insisted on behalf of the appellant, is at variance with that contained in the tenth charge, namely, upon the duty as to retreating. The first proposition of the charge, namely, that taking life is not justifiable where there is no reasonable apprehension of the loss of life or the suffering of great bodily harm, or, the reason for that rule: the tender regard of the law for human life, does not invite criticism. The third proposition, that where one is in peril of life or of great bodily harm from the attack of an adversary, he is not obliged to retreat, but may pursue his adversary, even to the taking of life, if necessary for his protection from that peril, is probably correct as far as it goes, unless it be in the doubtfully expressed contingency that retreat be not safe or practicable, but it might have applied the same rule in the contingency of the reasonable apprehension of such peril. The second proposition of the charge is that, "to justify a homicide on the ground of self-defense, a person endangered or assailed must employ all reasonable means within his power, consistent with his

safety, to avoid the danger and avert the necessity for taking life; he must even retreat, if retreat be safe and practicable.''. It is true, as we have seen, that the second proposition is attempted to be given dependence upon the first by the employment of the conjunction *therefore*. This dependence is only as supplying the reason for the second proposition, and does not make the hypothesis of the second proposition depend upon contingency stated in the first proposition.

The sense of the two propositions is that, because of the tender regard of the law for human life, one who has no reasonable apprehension of losing his life or suffering great bodily harm may not take the life of his assailant, and, for this reason, '' to justify a homicide on the ground of self-defense, a person endangered or assailed,'' regardless of the degree of real or apparent danger, ''must even retreat, if retreat be safe and practicable.'' That this is the sense in which the court intended to express the two propositions is, to some extent, manifested in the third proposition of the charge, which announces that one in peril of life or great bodily harm from his adversary, ''and retreat is not safe or practicable,'' may pursue, etc. In our judgment the proper interpretation of the eighteenth charge, in its second proposition, is in positive conflict with the law as stated in the tenth charge, and with the law as held in all of the cases we have cited and many other decisions of this State.

In Bishop's New Criminal Law (Ed. 1892), Ch. 56, the doctrine of self-defense is treated under two general divisions; the perfect defense, where the life of an aggressor may be taken when necessary, and the imperfect defense, where a trespass against the person or property may be resisted, yet not to the extent of involving the life of the trespasser.

In section 850 the author illustrates this distinction

as it involves the duty of retreating as follows:   "These
cases of mere assault and cases of mutual quarrel, where
the attacking party has not the purpose of murder in
his heart, are those to which is applied the doctrine of
the books that one can not justify the killing of another,
though apparently in self-defense, unless he retreated.
"to the wall" or other interposing obstacle, before re-
sorting to this extreme right.   But where an attack is
made with murderous intent, there being a sufficient
overt  act, the person attacked is under no duty to flee;
he may stand his ground, and if need be kill his adver-
sary.   And it is the same where the attack is with a
deadly weapon; for in this case the person attacked may
well assume that the other intends murder, whether he
does in fact or not."

Numerous authorities are cited to these propositions
and  among  them is the case of *Runyan* v. *State*, *supra*.

In an elaborate and able note to *Commonwealth* v.
*Selfridge*, H. & T.'s Cases on Self-defense, p. 31, after
showing the duty to retreat, it is said:   "This is clearly
the  doctrine in cases of nonfelonious assaults, and in
cases of mutual broils and combats, where the law sup-
poses both parties in some measure culpable.   4 Bla.
Com. 184; Foster Crim. Law 276; 1 Bish. Crim. Law (5th
ed.), sections 869, 870; Riley Case, *post* [155], where
the rule is clearly stated; Robertson's Case, *post* [152];
Wills' Case, *post* [145]; Meredith's Case, *post* [298]; Sulli-
van's Case, *post* [65].   But, if applied to all cases where
a person going his lawful way is assaulted, without ref-
erence to the question whether a felony, or a mere tres-
pass on the person, is manifestly intended, it would
require a man to flee before another who murderously
assails him, or a traveler to flee before a highway robber,
or a woman to flee before her would-be ravisher, before
resorting to the extreme measure of defense.   It is safe

to say that the law puts upon a person no such necessity. The old writers in speaking of *justifiable homicide*—that is, homicide committed in the resistance of felonies—make no mention of the duty of retreating.   Foster [273]; 4 Bla. Com. 180, 181, 182; 1 Hal. P. C., 488; 1 East, P. C., 271. Nor do the cases which discuss this question, so far as we know.   In Oliver's Case, *post* [275]; Harris' Case, *post* [276]; Rutherford's Case, *post* [734]; Roane's Case, *post* [224], and Payne's Case, *post* [863].   Except to state that retreat in such cases is not necessary, Pond's Case, *post* [814].   And, it is safe to say, that if an assault is manifestly felonious—or, to repeat an expression above quoted, if a 'known felony,' is attempted—the person assailed, being himself innocent, may ordinarily kill the assailant without retreating.   Accordingly it is stated by Mr. Bishop, that where an attack is made *with murderous intent*, the person attacked is under no obligation to flee, but may stand his ground, and, if need be, kill his adversary.   1 Bish. Cr. Law (5th ed.), section 850.   And this is clearly the law.   See James D. Kennedy's Case, *post*, [137]."

Whether the attack is felonious, or may be reasonably deemed so, by the person attacked, is a question for the decision of the jury, and, if the above distinction is to be observed in this State, it is essential that an instruction that the person assailed must retreat should also state the contingency when such retreat is required and should not leave the rule to apply without reference to the character or apparent character of the attack.

Whether the duty of one in exerting an imperfect defense, under the decisions in this State, must retreat, is not now a question, though it has frequently been asserted by our cases that the right to resist force with force depends upon the fact that the person who so re-

sists was himself without fault and in a place where he had a right to be; and it has also been held, by this court, that one who invites or voluntarily enters the conflict is not without fault.   Retreat, in such case, until a fair disposition to withdraw from the conflict and avoid the consequences of his own wrong are shown, becomes necessary; but in no case has our court held that one without fault and in a place where he had a right to be could not, without retreating, repel an attack which to him reasonably appeared to imperil his life or subject him to grievous bodily injury.   In the Runyan Case, *supra.* it was said: "A very brief examination of the American authorities makes it evident that the ancient doctrine, as to the duty of a person assailed to retreat as far as he can, before he is justified in repelling force by force, has been greatly modified in this country, and has with us a much narrower application than formerly. Indeed, the tendency of the American mind seems to be very strongly against the enforcement of any rule which requires a person to flee when assailed, to avoid chastisement or even to save human life."

If the charge in review, instead of applying generally the rule as to retreating, had applied it to the instances defined by Mr. Bishop as constituting the imperfect defense, we would have a different question, but we are not now prepared to say that it would have met with a different result if it had been applied to the case where the attack is apparently but a misdemeanor and the person attacked does not fear the loss of life or that he will suffer grievous bodily harm.   In such a case the right to defend exists, and that possibly without retreating, but it does not exist to the extent of taking life and permits only the return of necessary force.   So, it would appear that where the attack is such as just described, and no right to take life exists in defending, there would

be no reasons for applying the rule that one should retreat before he could take life.

Many other questions upon instructions are discussed, but the objections raised are of such a trivial character that they may not arise upon another trial and need not now be passed upon.

For the error in the eighteenth charge, the judgment of the Circuit Court is reversed, with instructions to sustain the appellant's motion for a new trial, and it is ordered that the appellant be returned to the custody of the sheriff of Morgan county.

Jordan, J., was absent upon the rendition of this opinion.

Filed May 14, 1895.