## ELLIS *v.* THE STATE.

[No. 18,714. Filed Nov. 29, 1898. Rehearing denied March 17, 1899.]

CRIMINAL LAW.—*Homicide.—Self-Defense.—Apprehension of Danger. —When Question for Jury.*—The evidence showed that deceased came to the house where defendant boarded, about 10 o'clock at night, and asked to stay overnight ;. that defendant went to the door and informed him that it was not a lodging house, and, after consulting the landlady, went back to the door and, having some words with deceased, closed the door, when deceased threw something and struck the house about three feet from the door ; that defendant went to his bedroom and got his revolver, went to the door and fired at once at deceased, who had gone outside the front gate about fifteen feet away. There was no evidence that deceased attempted to enter the house, but defendant claimed that when he opened the door deceased made a movement as if to shoot or throw at him, and, upon this appearance, he fired the fatal shot. *Held*, that it was the province of the jury to determine whether the circumstances afforded reasonable grounds for defendant to apprehend that his life was in danger, or that he was in danger of great bodily harm. *pp. 327-330.*

Ellis *v.* State.

CRIMINAL LAW.—*Self-Defense.—Apprehension of Danger.—Evidence.
—Weight.—Homicide.*—Where in the trial of a criminal cause the
jury, by their verdict, decided that defendant had no reasonable
apprehension of danger when he shot deceased, it is not the prov-
ince of the Supreme Court to weigh the evidence, if that part of it
tending to support the verdict is legally sufficient to justify the find-
ing of the jury.  *p. 330.*

SAME.—*Evidence.—Examination of Defendant as to Previous Of-
fenses.*—No error was committed in permitting the prosecuting
attorney to ask defendant on cross-examination concerning certain
prosecutions against him for criminal offenses committed by him
previous to the commission of the offense for which he was being
tried.  *p. 331.*

SAME.—*Evidence.—Examination of Defendant as to Previous Offenses.*
—Where defendant was cross-examined concerning certain prose-
cutions against him for criminal offenses committed previous to the
offense for which he was being tried, he is not entitled to testify as
to matters in excuse and extenuation of such acts.  *p. 331.*

SAME.—*Evidence.—Previous Threats.—Homicide.*—In the trial of a
case of homicide, previous threats of deceased are not admissible in
evidence where it is not shown that such threats had been commu-
nicated to defendant before the homicide.  *p. 331.*

SAME.—*Previous Threats.—Homicide.*—In the trial of a person charged
with murder, previous threats made by deceased against defendant
are not admissible in evidence, where it is not shown that de-
ceased attacked defendant.  *pp. 331-333.*

From the Putnam Circuit Court.  *Affirmed.*

*C. C. Matson,* for appellant.

*W. A. Ketcham,* Attorney-General, *Merrill Moores, John
M. Rawley* and *A. W. Knight,* for State.

McCABE, J.—The appellant was indicted in the Clay Cir-
cuit Court for murder in the first degree, in the killing of
John F. Krack. The venue was changed to the Putnam Cir-
cuit Court, where a trial resulted in a verdict and judgment
of guilty of murder in the second degree; the circuit court
having overruled appellant's motion for a new trial. The ac-
tion of the court in overruling the motion for a new trial is
called in question by the assignment of errors as the sole
ground upon which a reversal of the judgment is sought.

The first contention of appellant is that the verdict of the
jury is not sustained by sufficient evidence, and is contrary to

law. There were but two witnesses, besides the defendant, to the transaction. These two witnesses were Mrs. Brewer, the woman with whom appellant was living or boarding, and her daughter, about fourteen years of age. The defendant was a single man, about thirty years of age. The State's evidence consisted alone of the testimony of this family, and the statement made by the defendant to the prosecuting attorney the next day after the death of Krack, and his statement at the coroner's inquest.

The evidence showed that defendant, about fifteen years prior, had purchased a forty-four caliber Remington revolver and belt of a cowboy, and had been fined for carrying the same concealed about his person, and had been prosecuted and convicted of shooting at James Ragland, and, shortly after, he was again fined for an assault on said Ragland with, a revolver, and a little later he shot John Ragland in the shoulder while the two were engaged in a controversy. He frequently carried his revolver in a belt while at his work. About two years before, he moved to Clay county from Putnam county, and began boarding with a Mr. Brewer who lived at Center Point, in Clay county. Afterward, Brewer moved to a farm about a mile from there, and appellant went with them and boarded for about a year.

At the request of Mr. Brewer, appellant quit boarding at his house, but he continued to visit the house. A separation between Brewer and his wife ensued, and a divorce was granted to Brewer. Mrs. Brewer moved to Brazil, and appellant assisted her in the removal, and in a few weeks became a boarder in her house. There was some evidence that the character of Krack was not good, but the witnesses to that effect were but three, though he had lived there many years.

On the night of March 9, 1898, appellant attended a Salvation Army meeting with Mrs. Brewer, and they returned home about ten o'clock, or a little later. Mrs. Brewer and her daughter had retired for the night, while appellant was

left sitting in the front room, reading, when some one knocked at the front door. And the evidence tended to show that appellant went to the door, and asked who was there. The answer came that it was Fred Krack, and thereupon appellant opened the door. Krack then asked if Mrs. Brewer lived there, and, when told she did, Krack said he desired to stay all night. Appellant replied that that was not a lodging house. Krack said that Mrs. Brewer had told him some time before that she was going to keep boarders, and that, at any time he was in town, to come around and get his meals and stay overnight. Appellant responded that he would ask Mrs. Brewer, and went back into the house; and, after talking with her, he returned to the front door and told Krack that Mrs. Brewer said she could not keep him. Then Krack said he had the money to pay for his night's lodging, and insisted on staying overnight. Appellant then asked Krack if he was not sent there, and, getting no satisfactory answer, appellant asked him a second time, "Now, was not you sent here?" and Krack said, "No." A few words of a similar character were spoken, and then appellant closed the door; and just as he closed the door and started to go back into the room, Krack threw something, which struck the house about three feet from the door, which turned out to be a beer bottle. Appellant then went through the sitting-room and into Mrs. Brewer's bedroom to his trunk, took the key from his pocket, unlocked his trunk, got his forty-four caliber Remington revolver; and, as he started to the front door, Mrs. Brewer said to him, "For God's sake, Fred, don't go out there and go to shooting," and appellant replied, "Do you suppose I am going to allow a man to throw or shoot at me? No." Appellant then went to the front door, opened it and fired at once, the ball striking the deceased in the abdomen, penetrating a vital part, from which he shortly afterwards died. Appellant, without knowing whether the ball took effect, went into the sitting-room and resumed his reading. When the shot was

fired, Krack was at the front gate, on the outside, and the gate shut, about fifteen feet from the front door.

Appellant testified that deceased had started toward the gate when appellant closed the door, and, just as he closed the door, Krack threw and struck the house. There is no evidence that Krack ever at any time attempted to enter the house. Mrs. Brewer testified that she and appellant had discussed the probability of Mr. Brewer, her former husband, sending some one to her house some time to find out how they were living, and that Ellis had said that she might depend upon it that he would do something of that kind. Appellant claims that, when he opened the door, Krack made a movement as if to shoot or throw at him, and, upon this appearance of things, he fired the fatal shot. But appellant testified that Krack had his arm down at his side from the time he opened the door until he fired the shot, and from this appearance of things, he thought Krack was going to either shoot or throw something at him.

At another time, appellant testified that Krack "was in a position as though he was going to throw something at me or trying to get something out of his hip pocket," and again he testifies that he never saw him put his hand back to his hip pocket. Both he and Mrs. Brewer and her daughter testify that he fired as soon as he got the door open.

From this evidence, it was the exclusive province of the jury to determine whether the circumstances afforded reasonable grounds for appellant to apprehend that his life was in danger or that he was in danger of great bodily harm from Krack. Without such reasonable apprehension, appellant was not justified in firing the fatal shot. By their verdict the jury has decided that the evidence furnishes no reasonable ground for such apprehension when appellant shot the deceased. It is not our province to re-weigh the evidence, if that part of it tending to support the verdict is legally sufficient to justify the finding of the jury. We are of opinion that it was.

The appellant contends that his motion for a new trial ought to have been sustained because the court erred in permitting the prosecuting attorney to ask the defendant, on cross-examination, as to certain prosecutions against him for criminal offenses committed by him previous to the offense here charged, for the purpose of discrediting his testimony. That such rulings are not erroneous is well settled in this State. *Parker* v. *State*, 136 Ind. 284; *Bessette* v. *State*, 101 Ind. 85; *Blough* v. *Parry*, 144 Ind. 463.

Appellant also complains that the court erred in refusing him the right to testify to matters in excuse and extenuation of his acts on which the prosecution had been based. There was no error in such refusal, because that would have involved the trial of several other issues collateral to the issue the jury had been sworn to try, and thereby endangering the loss of the sight of the issue on trial. Accordingly, Judge Gillett, in his work on Indirect and Collateral Evidence, says: "A witness who admits his conviction of an offense cannot be permitted to state that he was not guilty."

It is further complained by appellant, under the motion for a new trial, that the court erred in excluding the testimony of the witness Cox to the effect that the deceased, Krack, had said to him on the afternoon of the day of, and before, the homicide, while he was on his way to Brazil, that he was going to Brazil to have trouble with Ellis. It is true that, in a case of homicide, previous threats by the deceased are admissible, especially if they have been communicated to the defendant before the homicide. *Wood* v. *State*, 92 Ind. 269; to the same effect is *Leverich* v. *State*, 105 Ind. 277. But there was no proof that such statement had been so communicated to the defendant before the homicide. Some courts hold threats are admissible without having been previously communicated to the defendant. Conceding, however, without deciding, that the offered evidence amounted to a threat against the defendant, we think it was immaterial, and therefore inadmissible. The evidence fails to show an attack on

the defendant by the deceased. Even if throwing the beer bottle against the house could be construed into an attack on the defendant, which we by no means concede, still, that was all over, passed, and gone, and the deceased had started away, and got outside of the gate, and had it closed, when the defendant went to the front door the second time, and fired immediately on opening the door, taking time only to say, "You had better get away from here now." When he made this remark, Krack had closed the gate, and had started down the sidewalk, and was a few feet from the gate; and the deceased turned around, with his face toward the defendant, on hearing defendant's remark, and was instantly shot. The evidence fails to show that the deceased said anything worse to the defendant than to "ask him if I did not knock at the door like a gentleman," in response to defendant's order. "You had better get away from here now."

In *Leverich* v. *State*, 105 Ind. 277, this court quoted section 757 of Wharton's Criminal Evidence, as correctly expressive of the law. The latter part of that section is peculiarly pertinent to the question here involved. It reads thus: "The question whether A. (the defendant) or B. (the deceased) was the aggressor in the fatal collision is to be determined; and if in such case, A.'s threats are admissible to prove that A. was the aggressor, B.'s threats, by the same reasoning, are admissible to prove that B. was the aggressor. For the purpose, therefore, in cases of doubt, of showing that the deceased made the attack, and if so with what motive, his prior declarations, uncommunicated to the defendant, that he intended to attack the defendant, are proper evidence. And so it has been frequently held. They are, however, inadmissible, unless proof be first given that there was an overt act of attack, and that the defendant, at the time of the collision, was in apparent imminent danger."

The evidence makes it too clear for reasonable controversy that at the time the fatal shot was fired there was no attack on the defendant, and that he was in no danger, either real or

apparent, it appearing therefrom that deceased was wholly unarmed.

There was no error in rejecting the offered evidence, nor was there any error in overruling appellant's motion for a new trial. The judgment is affirmed.