## KING v. STATE OF INDIANA.

[No. 23,312.    Filed March 1, 1918.]

1. HOMICIDE.—*Intent to Kill.*—*Use of "Deadly Weapons."*—*Inference.*—A thirty-eight-caliber revolver from which the accused fired two shots at the deceased, inflicting wounds that caused immediate death, was a dangerous and "deadly weapon," and its use authorized the inference, in a prosecution for voluntary manslaughter, of the essential element of unlawful intent. p. 221.

2. CRIMINAL LAW.—*Homicide.*—*Jury Question.*—*Self-Defense.*—*Verdict.*—*Review.*—The weight of the evidence and the inferences to be drawn therefrom are questions entirely within the province of the jury and, upon a motion for new trial, are to be reviewed by the trial court; hence in a prosecution for voluntary manslaughter, the question whether the accused established his plea of self-defense was a question for the jury, and there being evidence to support the jury's verdict finding the defendant guilty, the court on appeal will not interfere and set aside the judgment based upon the verdict.    pp. 221, 223.

From Lawrence Circuit Court; *Oren O. Swails,* Judge.

Prosecution by the State of Indiana against Van King. From a judgment of conviction the defendant appeals. *Affirmed.*

*R. L. Mellen,* for appellant.

*Ele Stansbury,* Attorney-General, and *Marshall·Woolery,* for the state.

MYERS, J.—Appellant in the court below was charged by indictment and convicted by a jury of voluntary manslaughter. The only question presented by this appeal calls for a review of the evidence. Appellant defended on the ground of self-defense. The defense of justifiable homicide was not sustained by the jury, and its verdict in this respect is questioned by appellant on the ground that there is no evidence tending to show an unlawful intention to take the life of the decedent, which is an essential element to be proved in order to sustain a charge of voluntary manslaughter.

Appellant admits that he fired two shots at the person of the decedent from a thirty-eight-caliber revolver. Both shots took effect—the first in the neck and

1. the second in the body of decedent, thereby inflicting mortal wounds from which he immediately died. The revolver used by appellant in this instance was a dangerous and deadly weapon (*Keesier* v. *State* [1899], 154 Ind. 242, 245, 56 N. E. 232, 21 L. R. A. [N. S.] 500, note), and its use as here shown by the uncontradicted evidence would authorize the inference of an intention to kill. *Murphy* v. *State* (1869), 31 Ind. 511; *Deilks* v. *State* (1895), 141 Ind. 23, 40 N. E. 120; *Walker* v. *State* (1894), 136 Ind. 663, 669, 36 N. E. 356; *McDermott* v. *State* (1883), 89 Ind. 187, 194.

The jury evidently drew this inference; and the intention to kill once established continued, and it was

2. not controverted by the defense relied on in this case. Appellant justified his act on the ground that he committed the act to protect himself from great bodily harm. The law of self-defense is now well settled in this state, but the question as to whether or not appellant made out a case entitling him to this protection was a question of fact for the jury. As to the law of self-defense, this court in *Runyan* v. *State* (1877), 57 Ind. 80, 84, 26 Am. Rep. 52, said: "The

weight of modern authority, in our judgment, establishes the doctrine, that, when a person, being without fault and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable." The doctrine announced in this case has been approved by this court in a number of cases—notably, *Page* v. *State* (1895), 141 Ind. 236, 40 N. E. 745; *Plummer* v. *State* (1893), 135 Ind. 308, 314, 34 N. E. 968; *Fields* v. *State* (1892), 134 Ind. 46, 55, 32 N. E. 780. The weight of the evidence and the inferences to be drawn therefrom are matters entirely within the province of the jury and, upon a motion for a new trial, to be reviewed by the trial court. Presumably all this was done and a correct conclusion reached. The homicide occurred on November 10, 1916, at about 4:30 o'clock in the afternoon. Appellant and his wife testified in substance that decedent, without invitation, entered the home of appellant, and to his sister, who was the wife of appellant and the only person then in the house, used scurrilous and epithetically abusive language, and announced his purpose of killing the occupants of that house. Appellant was not present at the time of decedent's arrival, but in a few seconds thereafter he entered the room, and observed the decedent in the attitude of striking his wife with his fist. Appellant testified that he asked the decedent what was the matter with him, further saying, "Why don't you behave yourself and act like a man?" The decedent then turned toward him and with an oath said, "I have come to kill you, and I will kill you first," and started toward appellant, throwing his hand around to his hip pocket. Appellant then fired the fatal shots. Appellant also testified that he had been out hunting on that day, and had taken the revolver used on this occasion with him;

that he returned only a few minutes before the trouble, which came on before he had taken time to put it away.

The evidence also tends to show that there was no apparent physical advantage by one of these men over the other. The decedent was not armed, and was somewhat intoxicated, as appellant knew from remarks made by the decedent directed to him earlier in the afternoon. Appellant and his wife were the only two living witnesses to the homicide; and both testified at the trial as to what occurred in the house after decedent entered as an excuse for the shooting. Evidence was admitted tending to show that these witnesses had made statements out of court relative to the homicide contradictory to their statements in court. The evidence also tends to show that appellant and his wife lived in the home belonging to her father, who lived with them. There is also some evidence to the effect that this possible preference by the father for his daughter had created some antagonistic feeling on the part of the decedent, not only against the father but against the sister and appellant as well; however, this antagonism, while known to appellant, had not theretofore extended to an open break between the families. Considering all of the evidence as disclosed by the record, of which we have here made some slight reference, it is clear that appellant's defense under the principles of law here announced was for the jury. This being true, our right to interfere and set aside the judgment based upon the jury's verdict has been completely foreclosed.

Having considered all the questions discussed by appellant, and finding no reversible error, the judgment is therefore affirmed.

NOTE.—Reported in 118 N. E. 809. General law of self-defense, 74 Am. St. 717. See under (1) 21 Cyc 875; (2) 21 Cyc 1028, 1091; 12 Cyc 906.