## LANDRETH v. STATE OF INDIANA.

[No. 25,619.   Filed April 22, 1930.]

R. L. *Mellon* and *Boruff & Boruff,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Donald R.* *Mote,* Deputy Attorney-General, for the State.

TRAVIS, C. J.—This is a prosecution for murder, preferred by an indictment, which alleged that appellant did on November 29, 1924, unlawfully, feloniously, purposely, and with premeditated malice, kill and murder Roswell Shields, which crime is defined by Acts 1905 p. 584, ch. 169, §347, §2412 Burns 1926.

The evidence presented by the briefs, which supports the verdict of guilty, may be narrated as follows: Landreth, the appellant, and Shields, the victim of the homicide, resided on their farms located one-half mile and a mile and a quarter south and southeast respectively from the village of Georgia in Lawrence County; they had been friends for many years; on November 2, 1924, between 7 and 8 o'clock in the morning, appellant went to the home of Shields in an automobile, and from his automobile called Shields to come out to talk with him in the highway in front of the house; Shields called back to the house for his son Clovis, and Clovis responded by going to the door of the house where, as he testified, he heard the conversation between Landreth and his father; in the conversation Landreth told Shields that he would "kill both the dog and him too," to which

Shields replied that he wouldn't; in referring to this conversation, Landreth testified, in his own behalf, that he told Shields that he would shoot Shield's dogs if he caught them after his sheep; the two men did not meet again until the fatal day of the homicide, November 29, 1924, between 5 and 6 o'clock in the evening; that evening, Shields was sitting in Elsworth Cox's general store at Georgia, near the stove talking with several others, who were witnesses in the case, at which time Landreth came to the store with his son-in-law; the store was 22 feet wide and 60 feet long, the front of which was glass, except the double door in the center; a double aisle ran from the door back to the stove; the division was made by a stock of goods; Landreth entered the store, which faced west, and bought some tobacco and coffee in the north aisle of the passage way; while he was making his purchase, Shields left the store by the front door, going on the south aisle; Landreth, without taking his purchases with him, went back to the stove to his son-in-law, and asked him if he was ready to go; he and the son-in-law started for the west exit and Landreth went out, but the son-in-law did not; as he went out, the door was left half open, and, immediately after his leaving the store, a shot was heard by all within hearing distance; no other noise or sounds were heard; within a few seconds after the shot was fired, Landreth re-entered the store through the open doorway, and said: "He hit me, what made him hit me. Oh, I hate him"; within a very short time, without having spoken to anyone or anyone speaking to him, Landreth left the store and departed; the people in the store went outside and found Shields lying at the south end of the porch, which extended across the front of the store, with his head and shoulders hanging over on the first step from the porch; his body was carried into the store; the coroner, who was notified, testified that death was caused by a bullet

wound three and one-fourth inches left of the nipple on the left side ranging downward; that the bullet was a leaden bullet of .38 caliber; and that he, the coroner, went to the home of Landreth and obtained from Landreth's wife a .38 caliber revolver which contained four loaded cartridges and one empty one; while making the examination of Shields' body, he examined his clothing for weapons and found "only a pocket knife"; Dr. Morrell Simpson testified that he made an autopsy; that death was caused by a gunshot wound in the breast, from a bullet which entered the left side between the fifth and sixth ribs near the nipple and ranged downward, severed the pulmonary artery, passed through the lungs, and that there were no powder burns on the body; Edward Haverly testified that he was the undertaker who took care of Shields' body at the store at about 8 o'clock on the day of the homicide, and that death was due to a bullet wound which entered Shields' body four inches to the left of the left nipple, and that he cut the bullet out of the body at a point two and one-half inches to the right of the spinal column above the kidney while the body was yet warm, and that he removed the body to the home of Shields.

Not much of this evidence was disputed by the evidence introduced on behalf of Landreth. Landreth testified in his own behalf that he fired the shot. The sole defense in this case is self-defense on the part of Landreth from the attack made upon him by Shields when Landreth left the store. Landreth testified that, when he left the store, it was dark outside, so dark that he could not recognize a certain person, but could see an object, and that he was hit violently in the pit of the stomach and knocked down, and that, as he arose, he was struck violently again on the side of the head and knocked down, that he then drew the revolver with which he fired the shot at the person who had hit him.

The issue was made by the plea of not guilty. The verdict of the jury was that Landreth was guilty of murder in the second degree, and that he be imprisoned in the State Prison during life. The court rendered judgment upon the verdict, that Landreth be imprisoned during life in the Indiana State Prison.

Appellant appealed from the judgment and alleges that the court committed error in overruling his motion for a new trial. The specific errors presented upon appeal are that: (1) The verdict is not sustained by sufficient evidence; and (2) is contrary to law; (3) a new trial should have been granted because of newly discovered evidence; and (4) instructions numbered 19, 20 and 21 should not have been given.

The necessary elements of the crime of murder in the second degree to be considered here are that appellant "purposely" killed the deceased, and that he did so purposely kill him "maliciously." The venue and the *corpus delicti* are neither challenged nor disputed.

Appellant sought by his evidence which related to self-defense to overcome the evidence by the State that the crime was committed purposely and maliciously. By the evidence of appellant, he drew a revolver, which is a deadly weapon, and shot the decedent. It was for the jury to find as an ultimate fact necessary to be proved that appellant purposely killed the decedent. The word "purposely" used in the statute predicated intent when used in the indictment. *Fahnestock* v. *State* (1864), 23 Ind. 231, 263; *Murphy* v. *State* (1869), 31 Ind. 511. Such intent or purpose may be inferred from circumstances in evidence, and the use of a deadly weapon is sufficient under the circumstances in this case to support an inference of intent to murder. *Walker* v. *State* (1894), 136 Ind. 663, 669, 36 N. E. 356. The element of malice necessary to sus-

tain a conviction in this case is for the jury to determine. *Dundovich* v. *State* (1921), 190 Ind. 600, 131 N. E. 377. Malice may be inferred from the use of a deadly weapon, which use caused the death charged in the indictment. *Dundovich* v. *State, supra; Bridgewater* v. *State* (1899), 153 Ind. 560, 563, 55 N. E. 737, 13 Am. Crim. Rep. 270; *Murphy* v. *State, supra.*

The defendant in a trial under a charge for murder may introduce evidence to rebut the inference of malice, and such evidence may be in proof of self-defense. But the defense of self-defense is an ultimate fact solely for the determination of the jury from the evidence. The court is of the opinion that the evidence in this case is sufficient to support the inference, necessarily found by the jury by its verdict, that the use of the deadly weapon by the appellant was purposeful and malicious, under which finding here it necessarily follows that it must be further found upon appeal that the verdict of the jury is sustained by sufficient evidence and that it is not contrary to law, to the extent of the attack upon the verdict here that the proof of self-defense was sufficient to overcome the inference that the killing was done purposely and maliciously.

The alleged cause for a new trial based upon newly discovered evidence is met by appellee in its brief by the assertion that the newly discovered evidence, as portrayed by affidavits in support of the motion for a new trial of this cause, if admitted in evidence, would be but cumulative. The newly discovered evidence would be solely in proof of the fact of self-defense. It would do nothing more than add weight to the evidence introduced at the trial in support of self-defense. The appellant does not challenge this assertion in appellee's brief by a reply brief. And, from a consideration of the evidence in this case, with the statement of the evidence alleged to be newly discovered, we cannot

say that the purported newly discovered evidence, being cumulative, is such that it may be said upon appeal that the trial judge violated his judicial discretion in over-ruling the motion for a new trial upon this cause.

Instruction No. 19, the giving of which is alleged to be error, is one over which there has been much judicial controversy. It follows *totidem verbis:* "You, gentlemen, in this case, are the judges of the law as well as of the facts. You can take the law as given and explained to you by the court; but if you see fit, you have the legal and constitutional right to reject the same and construe it for yourselves. Notwithstanding you have the legal right to disagree with the court as to what the law is, still you should weigh the instructions given you in this case as you weigh the evidence, and disregard neither without proper reason."

Appellant proposes that the language "you should weigh the instructions . . . as you weigh the evidence," places on the jury a restriction which is not imposed by law, and which restriction prejudices the rights of the appellant. In support of this proposition, he cites the case of *Schuster* v. *State* (1912), 178 Ind. 320, 323, 99 N. E. 422, to bring to the attention of the court on appeal the rule so often mentioned, that "instructions in criminal cases are not to bind the consciences of jurors but to enlighten their judgments"; and alleges that the instruction complained of imposes such restriction in requiring the jurors to weigh the instructions as they weigh the evidence, and that such a charge as the law of the case would have the opposite effect than to enlighten the process of judgment of the jurors.

Appellee cites and relies upon the case of *Hubbard* v. *State* (1925), 196 Ind. 137, 143, 144 (8), 147 N. E. 323, to support the challenged instruction, and proposes that the instruction does not limit the constitutional right of

the jury to determine the law and the facts. The cited case does not support the alleged erroneous instruction. The proposition of appellee is to the effect that, if an instruction does not "limit" the constitutional right of the jury to determine the law and the facts, the instruction is not objectionable. It is unnecessary to go to the extent of an absolute limitation of the jury by the court before it may be held that the instruction is erroneous and harmful. The difficulty which the jurors meet, when trying to obey the proposition laid down as law in the instruction, is that they are to weigh the instructions given by the court as they weigh the evidence. Jurors readily grasp the law as given by the court upon how to weigh evidence, which is that they take into consideration the appearance of the witnesses when testifying, their candor or lack of candor, their interest in the result of the case, or their apparent interest in the party to the suit. It would barely be less than puzzling to the most intelligent juror, knowing the law of the weighing of evidence, that he should apply it to the weighing of instructions. To weigh evidence means, among other things, whether a witness is speaking the truth or testifying falsely, whether to believe the evidence of a witness or certain witnesses, and discriminate between witnesses as to what evidence given by them a juror will believe and what he will not believe. Can it be possible that the jurors will determine what instruction they will take as the law and what they will discard as not the law, by noting the appearance of the judge, his countenance, his action on the bench, and whether they will believe one instruction because of the particular method in which he delivers it, and disbelieve another by the same token? To ask the question is sufficient to imply a proper answer, which is that the jury cannot, by any possible means known to law, weigh the charge of the law as given by the court. The danger lies in a case

(and the situation in this case may be like it) where the jurors have implicit confidence in the court, and although the jurors might desire to determine the law in the case so that they could return a verdict different from the one which they did return, but for the fact that they are unable to discard the charge of the law as given by the court and determine it for themselves, they cannot do it by attempting to weigh the charge as they were instructed to weigh the evidence. Such an attitude of mind is one where their consciences in the matter might be bound to the end that their true judgment would be withheld because the way to it was barred by an instruction which hindered them from proceeding as the Constitution permits.

Appellee cites the case of *Blaker* v. *State* (1892), 130 Ind. 203, 204, 205, 29 N. E. 1077, to support the instruction; but this case is disapproved by the Hubbard case, also cited by appellee. This instruction, which has engendered much controversy at the bar, has been considered in the following cases: *Anderson* v. *State* (1885), 104 Ind. 467, 4 N. E. 63, 5 N. E. 711; *Blaker* v. *State, supra; Hinshaw* v. *State* (1919), 188 Ind. 447, 461, 124 N. E. 458; *Chesterfield* v. *State* (1923), 194 Ind. 282, 141 N. E. 632; *Hubbard* v. *State, supra; Robbins* v. *State* (1925), 197 Ind. 304, 309, 149 N. E. 726; *Wolf* v. *State* (1926), 198 Ind. 261, 267, 151 N. E. 731; *Lehr* v. *State* (1927), 199 Ind. 280, 282, 157 N. E. 98.

The court is of the opinion that the statement in the case of *Blaker* v. *State, supra*, that this instruction is "correct on principle" must be disapproved. The court gave many instructions concerning the law of self-defense, some at the request of appellant. None of these are challenged as erroneous. This admits these instructions stated the law correctly, and it is presumed that the jury followed the instructions. It must follow that, if the jurors considered and applied this instruction, to

weigh the instructions as they weigh the evidence, as argued by appellant, in its application to the instructions which relate to self-defense, and the other instructions, appellant was not harmed; he had the benefit of all the law, as charged by the court to the jury, to reduce his guilt to that of manslaughter. Upon the application of this instruction to the other instructions upon the law, under which appellant hoped for a verdict of a lesser offense, it is plain that he was not harmed, and it follows that this court cannot find, as a matter of law, that the jury was guided to its verdict through error.

In the motion for a new trial appellant predicated error upon instruction No. 21, upon the words italicized in the following sentence, which is in the instruction, to wit: "The court instructs the jury that a mortal wound given with a deadly weapon in the previous possession of the slayer without any or upon slight provocation, is *prima facie willful and premeditated*." Had the verdict in this case been for murder in the first degree instead of murder in the second degree, this sentence would be pertinent in the consideration of the case. But, as premeditation has to do only with murder in the first degree, even though the instruction was bad because premeditation under the circumstances is *prima facie* established, it has nothing to do with the consideration of this case, for premeditation is not before us, and the instruction was not harmful. *Welty* v. *State* (1912), 180 Ind. 411, 100 N. E. 73. The use of the word "willful" in this instruction is out of place, for the reason that it harks back to the common law when the word "willful" was used in the definition of the crime, and was used in a presentation of a crime by indictment. It had to do only with intent, and had nothing to do whatever with the word "premeditated," because premeditation had to do with malice, and malice may be presumed from evidence of acts. 1 Wharton, Criminal Law

(11th ed.) p. 613; *Bridgewater* v. *State, supra; Welty* v. *State, supra.* Intent is a part of every crime of murder. Only for the fact that the instruction might be separated into two parts, the one referring to intent, and the other to malice, is it applicable to the crime of second degree murder and to this case.

The element of intent in the crime of murder may be inferred from facts in evidence, and it was sufficient for the court to charge such as the law of the case to the jury.

The use of a deadly weapon, as set forth in the instruction, is sufficient in law to base the presumption of unlawful and felonious intent. The use of the words "prima facie" is equivalent to the word "presumably." *State* v. *Wilkerson* (1913), 164 N. C. 431, 437, 79 S. E. 888. Those words do not have a conclusive meaning; they merely import that the evidence concerning such use of a deadly weapon that a mortal wound results, entitled the State to go to the jury upon the question of "intent" and "premeditation" for its consideration; but the instruction does not command an inference of "intent" or/and "premeditation" by the jury, but that such possible inference of "intent" and "premeditation" may be repelled. 49 C. J. (Prima Facie and Prima Facie Case) pp. 1346, 1347; 23 C. J. (Prima Facie Evidence) p. 9; *State* v. *Stover* (1908), 64 W. Va. 668, 63 S. E. 315. The quoted sentence from instruction No. 21 is not erroneous.

Appellant alleges error upon the following court's instruction, to wit: "No. 20. If you believe from the evidence that any witness who has testified in this cause has knowingly and willfully testified falsely to any material fact or facts, you may disregard the whole testimony of such witness's testimony, or you may give such weight to it on other points as you think it entitled to. You are the exclusive judges of the weight of the testimony," and cites as conclusive authority the

decision of this court upon requested instruction No. 20 in the case of *Hauk* v. *State* (1897), 148 Ind. 238, 258, 46 N. E. 127, 47 N. E. 465. The two instructions are not parallel in meaning. The instruction at bar goes the necessary step further than the one in the cited case by the clause, "or you may give such weight to it on other points as you think it entitled to." The instruction does not seek to estop the consideration of evidence which might be believed as true. The instruction is not amenable to the objection made, and, therefore, as to the objection, it was not error to so instruct the jury.

The evidence is sufficient to sustain all the elements of the crime of which appellant is guilty, and the verdict is not contrary to law because of the alleged objectionable instructions.

Judgment affirmed.