### KING v. STATE OF INDIANA.

[No. 30,914. Filed March 7, 1968.]

700

*Robert S. McCain,* of Fort Wayne, for appellant.

*John J. Dillon,* Attorney General, and *John F. Davis,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal in a criminal action in which the appellant, Herbert W. King, Jr., was charged with, and convicted of, murder in the second degree. Trial was to a jury, and a verdict of guilty was returned. Judgment was entered on the verdict and the appellant was sentenced to a term of life imprisonment.

The appellant waived arraignment and entered a plea of not guilty to the indictment, which, omitting the caption, reads as follows:

"The Grand Jury of the County of Allen, State of Indiana, upon their oaths, present that Herbert W. King, Jr., on the 11th day of June, 1965, in the County of Allen, in the State of Indiana, unlawfully, feloniously, purposely and maliciously, but without premeditation, did kill and murder Gene Carl Faust, a human being, by then and there unlawfully, feloniously, purposely and maliciously, but without premeditation, shooting at and against the said Gene Carl Faust, with a certain .38 caliber revolver, loaded and charged with gun powder and bullet and thereby mortally wounded said Gene Carl Faust with said bullet, discharged and shot as aforesaid, from which mortal wound the said Gene Carl Faust then and there died; the Grand Jurors, upon their oaths, as aforesaid, do say and charge that the

said Herbert W. King, Jr., did then and there unlawfully, feloniously, purposely and maliciously, but without premeditation, kill and murder the said Gene Carl Faust, in manner and form aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The indictment was filed pursuant to the terms of the following statute:

"Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and on conviction, shall be imprisoned in the state prison during his life. (Acts 1905, Ch. 169, Paragraph 350, p. 584.)" Ind. Anno. Stat. § 10-3404 (1956 Repl.)

Under the issues formed at trial the burden was upon the State of Indiana to prove beyond a reasonable doubt that:

1. Appellant killed the decedent.
2. The killing was done purposely and maliciously.

In our determination it is our duty to look to the record of the evidence most favorable to the appellee, State of Indiana. *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794. The evidence when viewed in this manner may be summarized as follows:

On June 11, 1965, Herman Gayheart went to his brother's apartment, a remodeled single residence, at 924 West Washington Street, Fort Wayne, Indiana. He arrived there at or around noon. Herman Gayheart's brother's apartment is on the lower left side of the building. Mrs. Liz Lyons, on that date lived in the lower right apartment. Appellant, on that date, lived in an upstairs apartment on the left side of the building. There is a common front porch on the building with a small divider running from the steps to the front of the house.

Herman Gayheart had known decedent, Gene Carl Faust, and his family for about three years. During the afternoon on that date, Herman Gayheart and his brother drank five

beers from a six-pack of beer. Liz Lyons drank one can of beer.

About 6 o'clock that evening Herman Gayheart, Liz Lyons, Herman Gayheart's cousin and the Kings were on the front porch. Dorothy Faust, wife of the decedent, and her two children were also on the front porch.

Then Gene Faust drove up in a 1953 Chevrolet and parked it on a side street. He got out of the car and came around to the front of the house. His little boy ran down the steps to greet him and said hello. Then the little boy called him a name—either a "souse" or a "louse." This remark upset decedent and he slapped his son. The child started to bleed.

The decedent then came up to the front porch and he and Liz Lyons had a conversation about discipline of the boy. Some remarks were exchanged by and between Herman Gayheart and the decedent and a fight started. Herman Gayheart, during the course of the fight, hit decedent on the head with the beer bottle. The two men fought for a couple of minutes.

Appellant then came over to where the two men were fighting and told them to break it up. At this point, appellant had a gun in his hand. Herman Gayheart turned decedent loose and backed up and got on the divider. At that time, decedent and appellant started to fight. They were on Liz Lyons' side of the porch. When they were fighting, appellant had his gun in his belt. He was not holding the gun in his hand. Decedent had his arms locked around appellant's legs and he was shaking appellant. Appellant got the gun out from under his belt and said he was going to shoot decedent. Gayheart told appellant not to shoot him and appellant told Gayheart to stay out of it. All witnesses stated they heard a gun fire. When the police arrived, they asked who shot Gene Carl Faust and appellant told them he had done it.

Herman Gayheart specifically testified as follows:

"A. They struggled around there two or three minutes fighting, and then Gene has his arms locked around Mr. King's legs there and his head down there at his

knees and he was shaking him and Mr. King was getting his gun out from under his belt. He had stuck it under his pants right there and he was getting it back out and said he was going to shoot him and he got up and I said, 'Don't shoot him,' and he walked over towards me and he put the gun on me then.

Q. Did he take the gun out of his belt?

A. He walked out just behind me when he said he was going to shoot him.

Q. Said he was going to shoot who?

A. Gene."

The witness Liz Lyons testified that the decedent and Gayheart had stopped fighting when the appellant appeared with the gun and that the deceased was trying to get in the door when the appellant shot him.

Dorothy Mae Faust testified she saw the decedent with a gun in his hand when he came out the middle door and walked over to the middle ledge.

And appellant aimed the gun, point blank, at Gayheart's face when Gayheart turned around and appellant said "Quit your fighting or I'll blow your brains out."

In response to a question "Why did you shoot this man at the time you did?" Appellant answered: "Well, more or less he was overpowering me and out of fear, so when I got the chance I shot him."

The central question presented by this appeal is whether there was sufficient evidence of probative value and sufficient reasonable inferences to be adduced therefrom, to justify the jury's finding of malice and purpose as a necessary element of the crime.

The question resolves itself into two issues, which may be stated as follows:

(1) Whether, on the record before us, the jury was required to find as a matter of law that appellant acted in self-defense, and

(2) If the jury was not required to find as a matter of law that appellant acted in self-defense, was the jury then

required, as a matter of law, to find that the evidence supports only a conviction for manslaughter, rather than for second-degree murder.

Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault,
(2) he was in a place where he had a right to be, and
(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.

*Bullard* v. *State* (1964), 245 Ind. 90, 195 N. E. 2d 856; *Hightire* v. *State* (1966), 247 Ind. 164, 213 N. E. 2d 707. The burden is upon the State to show that defendant does not meet one or more of these requirements. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N. E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson* v. *State* (1962), 243 Ind. 192, 184 N. E. 2d 16.

After the jury has made this determination in favor of the State and against the defendant, this Court, on appeal:

". . . has upon it a duty to consider, not to weigh, the evidence in the case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged" *Robinson* v. *State, supra,* 243 Ind. at 197. See also *Easton* v. *State* (1967) 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

From the evidence, as above set out, there was clearly substantial evidence of probative value to justify the jury in concluding that appellant was not in real danger of death or great bodily harm, or was not in good faith in fear of death or great bodily harm due to appar-

ent danger. Furthermore, there is also substantial evidence of probative value which would justify the jury in determining that appellant did not act without fault.

There was testimony to the effect that the decedent had been badly, almost viciously, beaten in the fight with Herman Gayheart that immediately preceded the shooting. The decedent's wife, Mrs. Faust, testified that Gayheart had stopped fighting with decedent, upon appellant's demand, and that the appellant himself began fighting with the decedent. Mrs. Faust also said that the last thing she remembered seeing before she heard the shot was the decedent holding on to appellant's legs, and that decedent might have been trying to get up.

This clearly constitutes substantial evidence of probative value tending to show that appellant was wrongfully prolonging a disturbance of the peace by fighting with decedent, and, in any event, decedent was in no condition which would lead appellant to conclude he was in danger of death or great bodily harm. Upon these facts, the jury was justified in concluding that appellant's contention of self-defense could not stand.

Appellants' cites the case of *Coryell* v. *State* (1891), 130 Ind. 51, 29 N. E. 369 in support of his position. In that case the defendant Coryell was found guilty of manslaughter and this Court reversed his conviction. In that case, as in the one at bar, the appellant admitted the killing and the claim was made that it was done in self-defense. It was the question of self-defense in the Coryell case that this Court determined in favor of the defendant, but the facts in that case are far different from those in the case at bar. This is clearly borne out by the language found in that case which is, in part, as follows:

> "The evidence, however, shows that he subsequently made an effort to withdraw himself from the conflict, and that from that time he acted on the defensive.
>
> The evidence for the State shows that after his unsuccessful effort to leave the school-house, he was forced to

abandon the possession of his child; was forced back into the corner of the room, and so set upon and assailed by the decreased and his father and brother that further retreat was impossible; that he was knocked or forced down on the floor and his cries for help unheeded; that after an unsuccessful effort to free himself from his assilants by using his pistol as a club, he fired the fatal shot, when down, with three men beating him." 130 Ind. at 57.

Appellant also cites in support of his position the case of *Trogdon* v. *State* (1892), 133 Ind. 1. This Court said in that case:

". . . if the assault of the attacking party be of such a character, and so eminent as to warrant the party assaulted, considering his situation and apparent surroundings, ■ to believe that he is in danger of the loss of life or great bodily harm, and he does so believe, he may, without delay, use such means as may be at hand, and reasonably seems to him to be necessary to repel the apprehended danger or attack, and if death follows as a result thereof, he will not be guilty of an unlawful homicide; and if, in such case, the danger appears to be real, and is reasonably believed by him to be so, the fact, if such be the fact, that the danger was not real, but only apparent, such fact would not render him guilty, for the question of apparent necessity as well as the amount of force necessary to employ to resist an attack, can only be determined from the standpoint of the defendant at the time, and under all the existing circumstances."

We agree with the rule stated in *Trogdon*. However, upon the basis of the foregoing discussion, the rule is not applicable to the present case, and cannot operate to appellant's benefit.

Having determined that appellant's contention of self-defense was properly rejected by the jury, we can summarily dispose of appellant's contention that "the mere use of a deadly weapon, by and of itself, cannot support a presumption of malice."

Appellant supports this position by arguing that the use of a deadly weapon in self-defense does not evidence malice

in connection with the crime of second-degree murder. Clearly, that argument is correct. As a matter of fact, if self-defense is shown, it eliminates the possibility that *any* crime has been committed at all.

However, it is well-established in Indiana that the use of a deadly weapon against an unarmed person in a manner likely to produce death is sufficient evidence for the jury to conclude that malice existed. *Sparks* v. *State* (1964), 245 Ind. 245, 195 N. E. 2d 469, rehearing granted on other grounds, 245 Ind. 50, 196 N. E. 2d 748; *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108; *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633 and cases cited therein. Where self-defense cannot be established to the satisfaction of the trier of the facts this rule remains controlling.

The question of whether or not malice was present in a given situation is a question for the jury to determine. *Landreth* v. *State* (1930), 201 Ind. 691, 696, 171 N. E. 192, 72 A.L.R. 891. The only question for this Court on appeal is whether the verdict of the jury is supported by substantial evidence of probative value. *Robinson* v. *State, supra; Easton* v. *State, supra; Baker* v. *State, supra.*

We conclude that the record shows sufficient evidence of probative value to support the conclusion of the jury that appellant acted with malice and purpose.

As a court of review, we are not free to substitute our view of what the evidence establishes for that of the jury. Therefore, and for all of the foregoing reasons, the judgment of the trial court is affirmed.

Judgement affirmed.

Lewis, C. J., Arterburn and Jackson, JJ., concur.

Mote, J., dissents with opinion.

### DISSENTING OPINION

MOTE, J.—I wish to dissent to the majority opinion and decision. I think the evidence in this cause points only to manslaughter. In the contemplation of evidence in a charge of the kind here involved, we must exercise care and consider the facts from a reasonable point of view at the time in question and in the eyes or mind of the one charged, and not from the standpoint of cold logic to be determined later by one not involved. Under stress of circumstances, people seldom follow the pattern set by those who are without pressure and have no need or cause for extricating themselves from seemingly untenable situations. Too often, as here, I think those who are called upon to judge others do not really understand the task assigned to them.

In this appeal, we are considering the statutory crime of homicide. The indictment charged Appellant to be guilty of second degree murder. First degree murder conviction requires proof of premeditated malice, whereas second degree murder conviction requires proof of purpose and malice to kill. Other degrees of the crime eliminate the necessity of proof of the state of mind of the accused. The state of mind of another at a particular instance is difficult to prove, as it should be. Such state of mind, premeditation, purpose or intent to kill, and malice may be inferred from the facts and circumstances shown by the evidence without reasonable doubt. This rule of law is not satisfied by mere "guess" and the rule of law generally relied upon to support the necessary elements of the crime of murder in any degree, that one is held responsible for the results of his own action or conduct, has so many exceptions that it, like the rule concerning inference, is a dangerous rule and should be exercised with particular caution.

In the case now before us, I do not find the demonstrated evidence to safely warrant an inference of purpose to kill and with malice; hence, I would reverse the trial court and remand the cause for a new trial. This conclusion is predicated

not upon the weight to be given the evidence, but upon the lack of evidence pointing unerringly to the conviction of second degree murder. NOTE.—Reported in 234 N. E. 2d 465.