JAMES EDWIN BLACKBURN *v.* STATE OF INDIANA.

[No. 370S43. Filed January 24, 1973.]

*Frank J. Pekofski,* of Gary, *Henry E. Sheldon,* of Cincinnati, Ohio, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, C.J. — Defendant-Appellant James Edwin Blackburn was charged by Grand Jury indictment with first degree murder in the death of Robert O. Lietzen, an Indiana State Trooper. He was found guilty of second degree murder after trial by jury in the Circuit Court of Fayette County and received a sentence of life imprisonment.

The evidence giving rise to his prosecution and this appeal may be summarized as follows: On Sunday morning, March 30, 1969, Michael Sterwerf, a thirteen year old boy, was hunting with a friend in wooded area near Metamora in rural Franklin County, Indiana, when they came upon a man (later identified as Blackburn) who threatened them with a rifle. The boys fled to the Sterwerf's residence where they reported the incident to Michael's parents who began searching for the man. Approximately one hour after the initial encounter with the young boys, Mr. and Mrs. Sterwerf found Blackburn standing beside his car in the woods. Defendant threatened the couple with his rifle, causing them to flee by firing shots into the air in their general direction.

The Sterwerfs then summoned the police. Trooper Carl Wood, of the Indiana State Police, was the first officer to arrive. Accompanied by Mr. Sterwerf, Trooper Wood had completed a brief examination of the area surrounding Appellant's car when other police units arrived. At that time, Blackburn's location was unknown. After a cursory search of Defendant's vehicle, the officers advanced into the woods where a campsite was located. At this time shots were heard in the vicinity of Appellant's car and the officers sought cover and returned the fire which appeared to be coming from the top of a nearby hill.

At this time, Blackburn's probable identity was determined through a license plate check, and an examination of papers and effects in the vehicle. Lt. Charles Short, who had known

Blackburn as a juvenile, called out in an attempt to persuade Appellant to stop shooting and surrender. Blackburn then came down the hill, pleading that he not be shot. Only after defendant was in custody was it learned that Trooper Lietzen had been fatally wounded.

Appellant testified that he had gone to the woods, intending to stay for a two-week period, in order to think over his domestic and financial difficulties in solitude. He had at least six rifles in his possession which he had originally planned to sell. After his encounter with the boys and Mr. and Mrs. Sterwerf, he moved to the crest of a hill where he constructed an "F" shape barricade. Appellant maintains that his only desire was to be left alone and that his only motive in firing was to drive off the Sterwerfs and the police. He also stated that he fired high in order to avoid hitting anyone and, due to the underbrush and trees, did not see officer Lietzen and was unaware that he had been shot. He pleaded not guilty and not guilty by reason of insanity.

Eight specifications of error are asserted by Appellant in seeking reversal of his conviction:

I. That the Court erred in overruling the Defendant's Motion to Quash the Indictment returned in the case;

II. That the Court erred in overruling the Defendant's Motion to Compel Pre-Trial Discovery;

III. That the Court erred in permitting prejudicial cross-examination of a defense expert witness by the Prosecuting Attorney;

IV. That the Court erred in excluding from jury consideration an exhibit of the defense regarding the accused's prior mental condition;

V. That the Court erred in refusing to accept and give four tendered instructions to the jury;

VI. The finding of the Jury was contrary to law and against the manifest weight of the evidence;

VII. That his conviction should be set aside and held for naught because he was not properly or effectively assisted in his defense by competent counsel; and

VIII. That prejudicial reversible error occurred when the Court permitted court-appointed psychiatrists to testify as experts regarding the Defendant's sanity during the prosecution's case-in-chief.

These points will be considered separately and in order. I. Appellant first contends that the trial court erred by failing to quash the Grand Jury indictment since it did not specify the exact weapon or type of ammunition allegedly used in the fatal shooting of patrolman Lietzen. The indictment charged that Blackburn employed "a certain deadly weapon, a rifle then and there loaded with live ammunition . . ." to kill the deceased. The essence of this argument is that, since Blackburn was armed with six rifles and a variety of bullets, the state was required to specify the exact weapon and ammunition used so that he would be able to anticipate the evidence which would be introduced against him at trial.

In this state, the offense charged in the indictment must be stated with such certainty that the accused, the court, and the jury may determine the crime for which conviction is sought. IC 1971, 35-1-23-25 [*Burns' Ind. Stat. Ann.* § 9-1126 (1956 Repl.)]; *Thomas* v. *State* (1968), 251 Ind. 76, 238 N. E. 2d 20; *rehearing denied;* See also *Noel* v. *State* (1966), 247 Ind. 426, 215 N. E. 2d 539, *rehearing denied.* The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. IND. CONST. art. I, § 13; See *State* v. *Brown* (1935), 208 Ind. 562, 196 N. E. 696. However, certain details may be omitted and a motion to quash may properly be denied unless the indictment is so uncertain and indefinite that the nature of the charge cannot be ascertained. IC 1971, 35-1-23-26 [*Burns' Ind. Stat. Ann.* § 9-1127 (1956 Repl.)] *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 316, *rehearing denied.*

A certain degree of flexibility is necessary when an indictment alleges the use of a deadly weapon, and the state is

not required to identify the exact firearm or caliber of bullets. *cf. Green* v. *State* (1900), 154 Ind. 665, 57 N. E. 637. We find that the general allegation, as contained in the indictment, was sufficient to apprise the accused, the court, and the jury of the nature of the offense charged. Further, the indictment is framed with sufficient specificity to preclude the possibility of Appellant being twice put in jeopardy for the same offense. II. Appellant next argues that the trial court erred by summarily denying his pre-trial motion to require the state to produce for examination "[a] complete copy of all testimony given before the Grand Jury which returned [the] indictment . . ."

This Court has held that the accused does not possess an absolute right to the pre-trial examination of Grand Jury minutes. D*inning* v. *State* (1971), 256 Ind. 399, 269 N. E. 2d 371, *rehearing denied; Mahoney* v. *State* (1964), 245 Ind. 581, 201 N. E. 2d 271. The deliberations of the Grand Jury are intended to be kept secret. IC 1971, 35-1-15-16 [*Burns' Ind. Stat. Ann.* § 9-816 (1956 Repl.)] However, the Grand Jury testimony of *state's witnesses* giving evidence at trial may be secured by two methods:

First, the accused may

call a member of the Grand Jury to testify for the purpose of ascertaining whether testimony of a state's witness before the Grand Jury was consistent with evidence given by the witness before the [trial] court. IC 1971, 35-1-15-17 [*Burns' Ind. Stat. Ann.* § 9-817 (1956 Repl.)]

*Dinning* v. *State* (1971), 256 Ind. 399, 269 N. E. 2d 371, 373; See also *Mahoney* v. *State* (1964), 245 Ind. 581, 201 N. E. 2d 271. In this case, there is no indication on the record cited to us that Appellant attempted to employ this device as a means of obtaining the Grand Jury testimony of any state's witness.

A second means of securing the Grand Jury testimony of state's witnesses was established in *Antrobus* v. *State* (1971), 253 Ind. 420, 254 N. E. 2d 873, where we held that prior state-

ments were subject to examination by the accused after laying an adequate foundation.

> An adequate foundation is laid when: (1) The witness whose statement is sought has testified on direct examination; (2) A substantially verbatim transcription of statements made by the witness prior to trial is shown to probably be within the control of the prosecution; and, (3) The statements relate to matters covered in the witness' testimony in the present case.

Id. at 427, 254 N. E. 2d at 876.

Here, Appellant failed to properly seek discovery as required by *Antrobus,* since he did not move for the disclosure of the Grand Jury testimony of any state's witness after their employment by the prosecution on direct examination. Since Appellant chose to rest upon his pre-trial motion, the trial court correctly denied him access to the Grand Jury minutes. It should be noted, however, that Appellant did move for and was provided a list of state's witnesses prior to the trial in his case. See *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60. *Bernard* v. *State* (1967), 248 Ind. 688; 230 N. E. 2d 536. Thus, he was afforded an opportunity to employ those pre-trial discovery procedures permitted by our Rules and case law. *See* 8A I.L.E. *Criminal Law* § 385 (1971); Orfield, *Criminal Discovery In Indiana,* 1 IND. L. FORUM 117 (1967).

III. Appellant's third allegation of error is that the trial judge erred in allowing the State to cross-examine Dr. Russell Mathewson, a defense psychiatrist, beyond the scope of the evidence produced at trial. During the defense case in chief, Dr. Mathewson testified that, in his expert opinion, Appellant could not comprehend the nature and consequences of his conduct; committed the shooting under the direction of an irresistible impulse, and lacked sufficient capacity to conform his activities to a code of acceptable behavior. Dr. Mathewson also gave a brief explanation and definition of the abnormalities which he believed Appellant possessed.

On cross-examination, the prosecution asked hypothetical

questions concerning the mental state of a man who would shoot his wife's lover upon finding the lover and the wife together. Appellant's objection that the question was beyond the scope of the evidence was overruled by the trial judge on the ground that the question was to "determine the Doctor's opinion on emotional acts or acts from thought." The trial court's ruling on this issue was not error.

Hypothetical questions may be employed in the cross-examination of experts as a means of determining the witness' knowledge of the subject matter and the foundation of his opinions. *Sharp* v. *State* (1939), 215 Ind. 505, 19 N. E. 2d 942, *rehearing denied; McHargue* v. *State* (1923), 193 Ind. 204, 215, 139 N. E. 316, 319; *Wheeler* v. *State* (1902), 158 Ind. 687, 63 N. E. 975, *rehearing denied.* An expert's "judgment upon germane matters may be tested by assuming premises and asking his conclusions." II WIGMORE ON EVIDENCE § 684 at 811 (3d ed. 1940).

In *Wheeler* v. *State* (1902), 158 Ind. 687, 63 N. E. 975, a medical witness was cross-examined regarding her opinion on the mental state of a notorious assassin at the time he took the life of a public officer. *Id.* at 699, 63 N. E. at 679-80. This Court held the question proper as a means of obtaining the views of the expert on the issue of insanity.

Also analogous is *Sharp* v. *State* (1939), 215 Ind. 505, 506, 19 N. E. 2d 942, 943, where a medical expert was cross-examined upon the question of whether septicemia might be produced by a certain type of injury when there was no evidence that the victim had such an injury. The admission of the witness' answer was held correct since a trial court may allow "a reasonable latitude for the purpose of testing the expert's knowledge of the subject." *Id.*

As stated in *McHargue* v. *State* (1923), 193 Ind. 204, 215, 139 N. E. 316, 319:

"[W]ithin the facts of which there is any evidence at all, when an expert witness has expressed an opinion based on facts assumed by the party introducing him to

■ have been established by proof or upon a hypothetical case put by such party, the other party may cross-examine him by taking his opinion based upon any other set of facts assumed to have been proved by the evidence, *or upon a hypothetical case put by the cross-examiner.*" (emphasis added)

Therefore, the prosecution's cross-examination of Dr. Mathewson was proper and appropriate. IV. During the presentation of evidence for the defense, the Fayette Circuit Court Clerk was called to the stand and identified court records showing that Appellant, in 1962, had been adjudicated mentally ill and committed to a state mental hospital. The trial court allowed the introduction of the commitment but excised a portion of the record containing an application for an investigation of mental health, a signed statement from Appellant's family physician, and statements of medical examiners. These items were properly excluded.

Records of judicial proceedings are competent evidence and may be admitted into evidence if they are relevant to a matter in issue. See *Barton* v. *State* (1900), 154 Ind. 670, 57 N. E. 515; 8 I.L.E. *Criminal Law* § 205 (1971); cf. *Marks* v. *State* (1942), 220 Ind. 9, 40 N. E. 2d 108, *rehearing denied.* Since Appellant's sanity was contested, proof of a former adjudication of mental illness and his resultant commitment were relevant and the trial judge was correct in allowing their introduction. However, the admission of a former judgment and order does not permit the admission of any evidence or testimony which led to the prior adjudication since such evidence is hearsay in the subsequent proceeding. 29 Am. Jur. 2d *Evidence* § 738 (1967). Because this case does not come within any of the exceptions to the hearsay rule, the trial court's ruling on the matter was correct. See *Raines* v. *State* (1971), 256 Ind. 404, 269 N. E. 2d 378; *Stearsman* v. *State* (1957), 237 Ind. 149, 143 N. E. 2d 81, *rehearing denied;* 12 I.L.E. *Evidence* § 50 (1959). V. The appellant next contends that the trial court committed reversible error in refusing to give certain instructions tendered

by the defendant. Defendant's tendered instruction #2 was offered to limit the jury's consideration of the evidence relating to appellant's embezzlement of funds prior to the act for which he was charged. That instruction reads as follows:

"If you find in this case that there has been evidence introduced of the misappropriation of funds by the defendant in this case, you are instructed that such evidence is not admitted for the purpose of proving the guilt of the defendant in this case. Such evidence, if any has been introduced in this case, is admitted solely for the purpose of enabling you, the Jury, to determine whether or not any material fact in this case has been proven or not proven."

The instruction, as offered, is confusing and indefinite and is subject to contradictory interpretations. We can find no purpose that it would have served. It was therefore not error for the court to refuse it.

Defendant's tendered instruction #6 involved the test to be applied by the jury to circumstantial evidence, and read as follows:

"The true test by which to determine the value of circumstantial evidence, in respect to its sufficiency to warrant a conviction in a criminal case, is, *not* whether the proof establishes circumstances which are consistent, or which coincide with the hypothesis of guilt of the accused, but whether the circumstances, satisfactorily established, are of so conclusive a character, and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. The force of circumstantial evidence being exclusive of its character, the mere coincidence of a given number of circumstances with the hypothesis of guilt, or that they would account for, or concur with, or render probable the guilt of the accused, is not a reliable or admissible test, unless the circumstances rise to such a degree of cogency and force, as, in the order of natural causes and effect, to exclude to a moral certainty, every other hypothesis except the single one of guilt. *If any one fact, necessary to the conclusion is wholly inconsistent with the hypothesis of the guilt of the accused, it breaks the chain of circumstantial evidence upon which the inference depends; and, however plausible, or apparently*

*conclusive, the other circumstances may be, the charge must fail."* (emphasis added)

The appellant contends that the refusal by the court to give the above instruction was reversible error. We do not agree. The first two sentences of the proposed instruction are entirely proper. *Robinson* v. *State* (1919), 188 Ind. 467, 470, 124 N. E. 489, 490, citing *Binns* v. *State* (1879), 66 Ind. 428; *Stout* v. *State* (1883), 90 Ind. 1. The fatal defect in the offered instruction is its last sentence. An instruction containing like language was condemned in *Dunn* v. *State* (1906), 166 Ind. 694, 78 N. E. 198. The court stated:

> "In view of the manner in which facts may act upon each other, both by way of supplying omissions in the direct evidence and strengthening weak testimony, we are of opinion that the court ought not to inform the jury that every necessary link in the chain of circumstantial evidence ought to be proved beyond a reasonable doubt. Our reason for this conclusion is that in the use of the work 'link' the figure of speech becomes misleading, since the integrity of the chain depends upon the resisting power of the weakest link, unaided by any other. It is true that the absence of the smallest link in the chain of evidence may so break the connection as to create a fatal weakness in the State's case, depending upon its nature and the character of the other facts, but it is obvious that an instruction should not be given which would have a tendency to lead the jury to infer that each and every subsidiary fact must be proved beyond a reasonable doubt, or that a strain upon any one of them beyond the breaking point would necessarily destroy the whole fabric of the evidence."

*Id.* at 698, 78 N. E. 199.

The refusal of the trial judge to give defendant's tendered instruction #6 was therefore not error.

Defendant's tendered instruction #8 dealt with the bias and prejudice of witnesses and read as follows:

> "The Jury has the right to consider the feeling and motives that may have influenced any witness in testifying in the case so far as they may be able to determine the same from the evidence and if, in this case, the jury believes that any

of the prosecuting witnesses entertain feelings of ill-will or hatred toward the defendant, the jury may consider that fact in determining what credit they will give their testimony."

The requested instruction was amply and fairly covered by Preliminary Instruction #7 which read as follows:

"In weighing the testimony and evidence presented to you it is proper for you to consider such witness' appearance, actions, conduct and manner of testifying while on the witness stand, also his candor and fairness or want of fairness, whether his statements are reasonable or unreasonable, consistent or inconsistent and whether or not they are corroborated or contradicted by other evidence which you deem worthy of credit. You may consider the extent of such witness' intelligence, his knowledge and his means of knowing of the matter about which he testifies, his recollections whether good or bad, *his interest in the result of the case, if any, and the nature and extent of it, his bias and prejudice, if manifested, his character, his business, habits and any other facts or circumstances which may be shown by the evidence and from which your observation and experience will aid you in arriving at the truth in this case.*"

It is not error to refuse to give requested instructions which are amply and fairly covered by other instructions given. *Sargeant* v. *State* (1970), 255 Ind. 252, 263 N. E. 2d 525, *rehearing denied; Malone* v. *State* (1911), 176 Ind. 338, 96 N. E. 1.

Defendant's tendered instruction #15 dealt with the necessity of proving the requisite intention to kill. The Court gave instructions on the subject to the jury which fairly and accurately apprised them of the manner in which they ought to consider the issue of defendant's intention. Preliminary Instruction #8 read as follows:

"The State of Indiana is not required to make proof of felonious intent as a fact, by direct and positive evidence for, as a general rule, men who do or commit acts which the law denounces as public offenses do not proclaim in public the intent with which such acts are done. Therefore all that the State is required to do in such cases is to intro-

duce such evidence on the trial of the cause as will satisfy the jury beyond a reasonable doubt, not only that the act, charged in the affidavit, was done by the defendant, but that it was done with the felonious intent charged in the affidavit."

Court's Instruction #17 and #23 also covered the same matter of intent to kill. But more significant than the fact that the subject of defendant's intention was covered amply by the instructions given, the requested instruction recited an erroneous proposition of law, i.e., that appellant had to have intended to kill Robert O. Lietzen specifically before he could be convicted of any of the degrees of murder. The law in Indiana and elsewhere has been stated as follows: "The fact that the homicidal act was directed against or intended to effect the death of one other than the person killed does not relieve the slayer of criminal responsibility." 40 Am. Jur. 2d *Homicide* § 11 at 302 (1968). A person is presumed to intend the natural and probable consequences of his acts and the intent to commit murder may be inferred from the act of shooting into a crowd. *Newport* v. *State* (1895), 140 Ind. 299, 39 N. E. 926; *Walker* v. *State* (1856), 8 Ind. 290. Therefore, defendant's proposed instruction was not a correct statement of the law applicable to the facts of this case. It was not error to refuse to give it. VI. The appellant contends that the verdict of the jury was contrary to law and against the weight of the evidence in that the state failed to prove beyond a reasonable doubt that the killing of the trooper was both purposeful and malicious. This court has consistently held that in reviewing an allegation that a verdict is contrary to law or not sustained by sufficient evidence, the Supreme Court will not weigh the evidence or resolve questions concerning the credibility of witnesses. Instead, the court will look to that evidence most favorable to the State and the reasonable inferences to be drawn therefrom, and the conviction will be affirmed if, from the viewpoint, there is substantial evidence of probative value from

which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt of the crime for which he was convicted. *Riner* v. *State* (1972), 258 Ind. 428, 281 N. E. 2d 815, *rehearing denied; Buise* v. *State* (1972), 258 Ind. 321, 281 N. E. 2d 93, *rehearing denied; McKinley* v. *State* (1972), 258 Ind. 348, 281 N. E. 2d 91, *rehearing denied.*

The statute defining murder in the second degree which was in effect at the time this case was tried reads as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life ..."

IC 1971, 35-1-54-1 [*Burns' Ind. Stat. Ann* § 10-3404 (1972 Supp.)]. The necessary elements of the offense of second degree murder under this section are: (1) the killing of a human being; (2) that it was done purposely; and (3) that it was done maliciously. *Landreth* v. *State* (1930), 201 Ind. 691, 696, 171 N. E. 192, 194. A jury is entitled to look to all the surrounding circumstances to determine whether each element of the charge is proved beyond a reasonable doubt. Where the record shows sufficient evidence of probative value to support the conclusion of the jury that appellant acted with malice and purpose, a court of review may not substitute its view of what the evidence establishes for that of the jury. *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465. The appellant contends that there were one or more theories derived from the evidence which were consistent with the defendant's innocence. While it is no doubt true that the evidence is conflicting with respect to appellant's mental state at the time he killed the trooper, the jury was entitled to believe or disbelieve, as they chose, the theories advanced by the defendant to explain his conduct. It is well settled that malice may be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to cause death. *Jones* v. *State* (1970), 253 Ind. 456,

255 N. E. 2d 105; *Baker* v. *State* (1964), 245 Ind. 129, 195 N. E. 2d 91, *rehearing denied; Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633; *Schlegel* v. *State* (1958), 238 Ind. 374, 150 N. E. 2d 563, *rehearing denied.* There is ample evidence to sustain the jury's conclusion that Blackburn's use of a loaded gun against advancing police officers was malicious. Likewise, the jury was entitled to infer that the killing of the trooper was purposeful because of the use of a deadly weapon, *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108, and because of defendant's act of shooting toward a group of persons, *Walker* v. *State* (1856), 8 Ind. 290. Malice signifies a general malignant recklessness concerning the lives and safety of others, and we think there was substantial evidence of probative value from which the jury could have inferred the requisite intention. The jury had the discretion to disbelieve the evidence of insanity and the defendant's statement that he did not intend to kill anyone. There was sufficient evidence to sustain the jury's finding that Blackburn killed the trooper with malice and purpose.

VII. The appellant next contends that his trial counsel was incompetent which, in appellant's view, deprived him of his right to effective and competent counsel in violation of the State and Federal Constitutions. The specific allegations are set out in his brief as follows:

> "Where, in a first degree murder prosecution, retained counsel (1) Makes no effort before or during trial to formally or informally suppress, strike or object to incriminating verbal and written admissions and statements of the accused under circumstances, when made, indicating that constitutional safeguards were not observed; (2) Fails to contest, in a case where insanity is raised as a defense, the voluntariness thereof [meaning confessions or admissions]; (3) Does not before or during trial formally or informally move to suppress or object to evidence illegally searched for and seized from his client's automobile; and (4) Repeatedly fails to object to prejudicial and detrimental testimony and exhibits offered in evidence, and accused's rights to effective and competent counsel under the Federal and Indiana constitutions are violated."

This court has previously held that "there is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption." *Robbins* v. *State* (1971), 257 Ind. 273, 274 N. E. 2d 255, 258, *Issac* v. *State* (1971), 257 Ind. 319, 274 N. E. 2d 231, 237. See also, *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158, 160; *Schmittler* v. *State* (1950), 228 Ind. 450, 467, 93 N. E. 2d 184, 191.

The mere fact that another attorney might have conducted the defense differently is not sufficient to require a reversal. *Hendrickson* v. *State* (1954), 233 Ind. 341, 118 N. E. 2d 493. Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice. *U.S.* v. *Cariola* (N. J. 1962), 211 F. Supp. 423. Appellant's own citations of authority establish that a reviewing court should look to the "totality of circumstances" to determine whether or not trial counsel was competent. *U.S.* v. *Hammonds* (D. C. Cir. 1970), 425 F. 2d 597. A reviewing court ought not second guess matters of judgment or trial strategy or even mistakes. A poor result alone does not amount to denial of adequate assistance of counsel. *Application of Tomich* (Mont. 1963), 221 F. Supp. 500; See also Anno. 74 ALR 2d 1390 and cases cited.

Applying the above standards to the record before us we are unable to say that appellant has met the burden of establishing incompetency or ineffective representation. As to counsel's failure to object to the admission in evidence of defendant's written statement, it should initially be noted that we are not directly faced with the question whether or not there was a violation of the *Miranda* rules in this case. The issue presented is whether, assuming arguendo that there was such a violation, appellant's trial counsel was incompetent and ineffective to the extent requiring a reversal and new trial. We are of the view that counsel's failure to object in this

instance was a matter of trial strategy, since the statement offered contains much that is favorable to the defendant in this case. It carefully recites the reasons why he was on the hill that day, and the statement that he did not intend to hurt anyone, but rather only scare them away, and that he didn't know anyone had been killed until much later. Trial counsel might well have thought that such evidence would bolster the defense. We cannot say that trial counsel was incompetent because of his failure to object to the admission of the statement, even though we, as lawyers, might have adopted a different tactic in the course of trial.

Another allegation of incompetency of counsel is based upon the alleged illegal search of appellant's automobile. The evidence shows the car was parked in the woods near the scene of the alleged crime. After the police had been informed of shooting in the vicinity and had spread out for a search to determine who had been responsible for the shooting, they came to the car to try to establish the suspect's identity. There was certainly probable cause for the search at that time under the emergency. Upon an inspection of the car they found it was registered in the name of Indianapolis Newspapers Inc., and from that information were advised that it was probably in appellant's possession. At a later search, at the Connersville Police Post they also discovered a notebook containing an unfinished letter Blackburn was writing to his wife. Appellant claims the introduction of the fruits of the search was objectionable and that his counsel was ineffective or failing to raise the question. Again, we are not directly faced with the question whether the search and seizure violated the Constitution, and we need not decide it. Here, the issue is whether trial counsel was ineffective because of his failure to object to the admission of the letter and other unspecified articles. We think that the failure to object here was again a matter of strategy, since the letter might well have been thought to bolster the defense of insanity. We

cannot say that such a tactic is unprofessional, and in the last analysis, we will not second guess trial counsel unless it appears from the "totality of the trial" that it was a mockery of justice. In fact, it has been held that total failure to object to certain errors in the trial proceedings does not necessarily constitute incompetency. *Spight* v. *State* (1967), 248 Ind. 287, 226 N. E. 2d 895, See also *Issac* v. *State* (1971), 257 Ind. 319, 274 N. E. 2d 231 and *Lindsey* v. *State* (1965), 246 Ind. 431, 204 N. E. 2d 357. It should be noted that appellant's brief does not tell us how he was prejudiced by the introduction of the items seized.

Finally, appellant fails to point to a single instance where trial counsel failed to object to "hearsay and conclusion evidence" or to "irrelevant and cumulative evidence concerning the accused's so-called arsenal." Quite the contrary, the record before us is replete with instances of counsel's objections to evidence and forceful arguments before the bench. In our view the record fully warrants the conclusion that trial counsel was competent. Trial counsel introduced fourteen exhibits and presented testimony of seven witnesses in defense. Before the trial, he moved for and obtained a change of venue, filed a motion to quash the indictment with a memorandum attached, filed a plea of not guilty and not guilty by reason of unsoundness of mind, prepared and filed a petition for defendant's immediate psychiatric examination, motions for continuance, motions to produce, motion for directed verdict at the close of the state's evidence, tendered twenty instructions to be presented to the jury, filed a motion for new trial with memorandum attached, filed petition for appointment of pauper counsel for defendant's appeal, filed petition for transcript at public expense, and a praecipe for transcript for the appeal. It is clear that appellant got a good deal more than mere perfunctory representation and his trial was, in no way, a mockery of justice. *Robbins* v. *State* (1971), 257 Ind. 273, 274 N. E. 2d 255. VIII. The Appellant's final contention is that the trial court committed reversible

error by allowing two court appointed psychiatrists to testify during the state's case in chief. The appellant directs our attention to IC 1971, 35-5-2-2, *Burns' Ind. Stat. Ann.* § 9-1702 (1956 Repl.) which provides:

"At the trial of such cause, evidence may be introduced to prove the defendant's present sanity or insanity, or his sanity or insanity at the time at which he is alleged to have committed the act charged in the indictment or affidavit. When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial. *Such testimony shall follow the presentation of the evidence for the prosecution and for the defense,* including testimony of medical experts employed by the state and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses." (emphasis added)

In the case of *Henderson* v. *State* (1954), 233 Ind. 598, 122 N. E. 2d 340, we held that "it was the clear intent of the statute that an expert appointed by the court shall not be permitted to testify on the subject of the sanity or insanity of the accused until after the presentation of the evidence of the prosecution and defense." *Id.* at 602, 122 N. E. 2d at 342. The reason for the final sentence in the statute above quoted is clear. It relieves both parties of the burden of having the court-appointed physicians become their witnesses with the result that they would be bound by such testimony. The statute permits both parties to cross-examine the physicians as hostile witnesses. However, for an error to be reversible, the appellant must show how his substantial rights were prejudiced, and must do so in the record and in his brief. In the case at bar, there is no such affirmative showing of prejudice to the defendant as a result of the error. The mere fact that the evidence presented out of order was not in defendant's favor is insufficient to make out a case of prejudicial error. As a matter of fact, the

error in this case may have worked to defendant's advantage since the jury would likely have been influenced to a greater extent had the testimony of the two court-appointed physicians come in at the close of all the evidence. At the very least, the unfavorable testimony would have been fresher in their minds prior to their deliberations. The proposition that technical errors or defects which are not shown to have prejudiced an accused's substantial rights will not suffice to permit a reversal is fully applicable to this case. IC 1971, 35-1-47-9, *Burns' Ind. Stat. Ann.* § 9-2320 (1956 Repl.) ; *Henderson* v. *State* (1954), 233 Ind. 598, 122 N. E. 2d 340. "The burden is on the appellant to show that his rights were prejudiced by the error complained of, and a record must be presented which affirmatively shows harmful error since all the presumptions are in favor of the judgment and rulings of the trial court." Ewbanks Indiana Criminal Law § 552 (Symmes ed. 1956). In the case at bar, the appellant did not meet that burden.

Judgment affirmed.

All Justices concur.

NOTE.—Reported in 291 N. E. 2d 686.