LESTER ERVIN MEYERS *v.* STATE OF INDIANA.

[No. 1173S226. Filed January 10, 1975.]

*Harriette Bailey Conn,* Public Defender of Indiana, *John R. Gerbracht,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

PRENTICE, J.—This is an appeal from the denial of Post-Conviction relief petitioned for under PC. Rule 1.

Petitioner was convicted of First Degree Murder in 1954 and sentenced to life imprisonment. The error urged in this appeal is the trial court's failure to find that he was denied effective counsel in the prosecution of his appeal, in that his court-appointed counsel abandoned the appeal without the petitioner's acquiescence.

The record herein reflects that on August 4, 1954 the petitioner's counsel filed a petition for time within which to file the transcript and assignment of errors and the grant of said petition extending the time to September 14, 1954. The record and assignment of errors were filed herein on September 13, 1954. Thereafter, the Court granted four separate extensions of time within which to file the appellant's brief, to and including July 16, 1955. On August 23, 1955, no brief having been filed, this Court dismissed the appeal upon its own motion.

Had the trial court at the post-conviction hearing had nothing before it but the above related information and the testimony of the petitioner, it would have been hard pressed to deny relief, inasmuch as the petitioner testified unequivocally that the attorney did not consult with him prior to, during or after the trial, and that his first knowledge of the appeal having been abandoned was derived through the newspaper. The trial court, however, found that the appeal

was abandoned for strategic reasons and with the consent of the petitioner.

Counsel for petitioner (appellant) has dwelled upon the qualified nature of his predecessor's testimony and has presented isolated bits thereof out of context to persuade us that the petitioner carried his burden of proof by a preponderance of the evidence, as required by § 5 of PC. Rule 1 and the case law. *Maxwell* v. *State* (1974), 262 Ind. 526, 319 N.E.2d 121; *Payne* v. *State* (1973), 261 Ind. 221, 301 N.E.2d 514; *Haddock* v. *State* (1973), 260 Ind. 593, 298 N.E. 2d 418. Such excerpts are as follows: "I think it was a joint decision." His (the testifying lawyer) recollection was, "pretty fuzzy." He (the attorney) was not certain whether the motion for a new trial was filed at the petitioner's request or on his advice. He (the attorney) did not know how many extensions of time he obtained for filing the brief but believed that he obtained some. He (the attorney) might be mistaken but his best recollection was that he did communicate with the petitioner. It was his (the attorney's) recollection that the petitioner had fired considerably more than three shots into his wife's body. With respect to the last two statements, we note that the first was an answer given in response to the question as to whether or not he had communicated with the petitioner *after he was transferred to the State Prison.* With regard to the number of shots fired, we note that six or seven had in fact been fired at the deceased by the defendant at close range, although only three had entered her body.

Other testimony from the attorney disclosed that he had been actively engaged in the practice of criminal law for approximately twelve years at the time of the trial and aborted appeal and had tried "quite a few" murder trials prior to the petitioner's. Nineteen years had elapsed and his file had been destroyed, but he was "reasonably certain" that he discussed the defense at some length with the petitioner, because he had formed the opinion from his interviews with him that the petitioner was not criminally responsible for

the homicide, and that it was for that reason that he entered a plea of not guilty by reason of insanity, as well as the general plea of not guilty.

At one point, the attorney testified on cross-examination, "I cannot tell you, nor will I represent to you that it is clear in my mind and I have complete recall of the times of the various conversations. I do know, however, that this case was fully discussed with Mr. Meyers, prior to the time of trial." At another point, the attorney testified that the petitioner was advised of his appeal remedies and rights and the possible consequences, that he advised him that in his opinion the worst thing that could happen would be for him to get a new trial and that he was reasonably certain that he, the petitioner, knew exactly what he meant.

The following is typical of the attorney's testimony:

"A. Mr. Meyers' state of mind at that particular time was such that he was not very communicative and I can understand why. He had just been through a harrowing experience, both in the unhappy state of his marital affairs, his trial and his conviction, and Mr. Meyers did not discuss with me at great length any matter. But I felt that we were communicating with each other and I think he understood fully what I was telling him and I was of the opinion that he agreed with me completely at that particular time.

Q. To your recollection, Mr. Rice, was there any correspondence between you and Mr. Meyers after he had been taken to the state prison?

A. I cannot hear you, Mr. Rachels.

Q. I said, the best you can recall was there any correspondence between you and Mr. Meyers after he was sent to the state prison?

A. The communication, I am certain that I had communication with Mr. Meyers about the advisability of prosecuting an appeal and simply too much time has passed, I cannot tell you what communication occurred, by conversation or by correspondence. All of my files are gone. I do not keep my files that long. They would be so voluminous that I couldn't possibly cope with them. I have no records in my office of what occurred. But I do know that we discussed the advisability of at-

tempting to get a new trial at that time for the very obvious danger of a possible imposition of a death penalty. * * *."

The attorney further explained to his examiner and cross-examiner that following the trial he had ascertained that a guilty verdict was reached on the first ballot, that on the first ballot for sentencing, the vote was ten to two for the death penalty and upon the second ballot it was eleven to one for death. He further testified that he was deeply concerned that the result of a retrial might be death for the petitioner, which was permissible under the law at that time and not too extraordinary. He further stated that he believed that the petitioner was not criminally responsible for the death of his wife but that the jury obviously had not been persuaded by the insanity theory, and there was no reason to believe it would be otherwise on a retrial.

There is a strong presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome that presumption. *Maxwell* v. *State, supra; Haddock* v. *State, supra; Beck* v. *State* (1974), 261 Ind. 616, 308 N.E.2d 697; *Lowe* v. *State* (1973), 260 Ind. 610, 298 N.E.2d 421; *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686. In the case before us, this presumption is strengthened by the record of the trial proceedings which clearly discloses that the attorney charged with dereliction of his professional responsibilities represented the petitioner well throughout the trial and followed with a motion for a new trial charging twenty-five grounds, including twenty errors in the admission and rejection of evidence, error in overruling the motion to quash the indictment, error in providing for an alternate juror, that the verdict was contrary to law and that it was not sustained by sufficient evidence and ultimately that the court erred in overruling a motion for mistrial interposed by reason of improper remarks by the prosecutor in summation. Despite the numerous errors alleged in the motion for new trial counsel indicated that in

addition to believing that a new trial would not be in his client's best interest, he had no faith in the appeal.

Unquestionably, it would have been more professional for the attorney to have filed a motion to dismiss the appeal supplemented with the written consent of the petitioner. In view of the numerous charges of incompetence and ineffectiveness levied by prisoners today against their lawyers and the receptiveness of the courts to hear and determine such complaints, we doubt that any prudent lawyer today would follow the line of least resistance and permit a criminal appeal to simply abort by inaction. We must remember, however, that this is a course of action taken nearly twenty years ago when the rights of persons accused and convicted were not so carefully protected and the actions of lawyers and law enforcement officials so carefully scrutinized. We cannot say that such action by petitioner's counsel, although admittedly unjudicious, together with petitioner's unequivocal testimony overcame, as a matter of law, the presumption of competence of counsel, the evidence of competence gleaned from the record of the trial and the attorney's testimony. In post-conviction proceedings, as in other matters tried before the court, the trial judge, as the trier of facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. *Maxwell* v. *State, supra; Hoskins* v. *State* (1973), 261 Ind. 291, 302 N.E.2d 499.

We find no error, and the judgment of the trial court is affirmed.

Givan C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 321 N.E.2d 201.